NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JUSTIN B., | ) | |
| | ) | Supreme Court No. S-16859 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 3PA-14-00042 & |
| v. | ) | 3PA-15-00045 CN |
| | ) | |
| STATE OF ALASKA, DEPARTMENT | ) | MEMORANDUM OPINION |
| OF HEALTH & SOCIAL SERVICES, | ) | AND JUDGMENT* |
| OFFICE OF CHILDREN'S SERVICES, | ) | |
| | ) | No. 1689 – August 15, 2018 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Susan Greenlee Sonneborn, Anchorage, for Appellant. Mary Ann Lundquist, Senior Assistant Attorney General, Fairbanks, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I. INTRODUCTION

A father challenges the superior court's decision terminating his parental rights to two children. Because the court's findings are not clearly erroneous and the court correctly applied relevant law, we affirm its decision.

---

\*       Entered under Alaska Appellate Rule 214.

## II.   BACKGROUND

Justin B. had two children:  Kora, born in early 2014, and Jared, born in 2015.[1]  The Office of Children's Services (OCS) became involved with the family in April 2014 when Kora was only a few months old.  A family friend who babysat Kora reported that the parents often arrived late and unannounced to the babysitter's home requesting care for Kora for indeterminate amounts of time.  Kora would be dropped off dirty, in a filthy car seat, without extra diapers or formula.

In May, after learning from the babysitter that Kora had been dropped off four days earlier and again without necessary supplies, OCS requested that the babysitter bring Kora to OCS.  The caseworker performing Kora's initial assessment was "immediately worried" about her condition because she had a "super flat" head and her arm was rotated at the elbow.  The caseworker noted the babysitter's report that Kora's parents often left her in the car seat, even to sleep, causing her to be unable to stretch her legs out all the way.  OCS took emergency custody of Kora.  In September the parents stipulated that Kora was a child in need of aid under AS 47.10.011(10) (parents' habitual use of intoxicant).

Jared was born in February 2015 and tested positive for marijuana (THC).  Two days later OCS filed an emergency petition to adjudicate Jared as a child in need of aid under AS 47.10.011(6) (physical harm), (9) (neglect), (10) (parents' habitual use of intoxicant), and (11) (mental illness).  The parents did not contest probable cause; OCS took custody of Jared.

OCS had concerns about Justin's homelessness, parenting abilities, substance abuse issues, mental health, and domestic violence.  Justin pleaded guilty to domestic violence assault for assaulting the children's mother in November 2015 while

---

[1]   Pseudonyms are used for all family members.

he was under the influence of marijuana and methamphetamine. He was incarcerated from November 2015 to September 2016 and then moved to Texas following his release; he did not provide OCS his contact information.

In October 2016 OCS petitioned for termination of Justin's parental rights.[2] After a termination trial stretching over several days from February through August 2017, the superior court concluded OCS had met its burden of persuasion for termination of parental rights.[3] Justin challenges the superior court's findings that he failed to

---

[2] The children's mother voluntarily relinquished her parental rights.

[3] Under relevant Alaska Child in Need of Aid (CINA) statutes and rules, parental rights may be terminated at trial only if OCS shows:

> (1) by clear and convincing evidence that
>
>> (A) the child has been subjected to conduct or conditions described in AS 47.10.011 and
>>
>>> (i) the parent has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or
>>>
>>> (ii) the parent has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury; [and]
>>
>> . . . .
>
> (2) by clear and convincing evidence that
>
>> (A) the Department has complied with the provisions of AS 47.10.086 concerning reasonable efforts; [and]
>>
>> . . . .
>
> (3) by a preponderance of the evidence that termination of

(continued...)

remedy the conduct or conditions placing his children at risk of harm and that OCS made reasonable efforts to reunify the family.

## III. STANDARD OF REVIEW

Whether a parent failed to remedy the conduct or conditions placing a child at substantial risk is a finding of fact; we review the superior court's findings of fact for clear error.[4] " 'Whether OCS made reasonable efforts to reunify the family is a mixed question of law and fact.' For mixed questions, 'we review factual questions under the clearly erroneous standard and legal questions using our independent judgment.' "[5] Findings are clearly erroneous only if, after reviewing the record in the light most favorable to the prevailing party, we are left "with a definite and firm conviction that a mistake has been made."[6]

## IV. DISCUSSION

### A. The Superior Court Did Not Clearly Err By Finding Justin Failed To Remedy In A Reasonable Time The Conduct And Conditions That Made His Children In Need Of Aid.

The superior court found by clear and convincing evidence that Justin had

---

[3]    (...continued)
parental rights is in the best interests of the child.

CINA Rule 18(c); *see also* AS 47.10.088 (establishing requirements for termination).

[4]    *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010).

[5]    *Kylie L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 407 P.3d 442, 448 (Alaska 2017) (quoting *Joy B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 382 P.3d 1154, 1162 (Alaska 2016)).

[6]    *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004) (quoting *A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 950 (Alaska 2000)).

not remedied the conduct that placed his children at risk. The court found he had failed to participate in substance abuse treatment as recommended in a November 2014 assessment, a December 2015 assessment, and a June 2017 psychological evaluation, and he had failed to address his inability to control impulses, unresolved past trauma, mental health diagnoses, aggression and violence, and inability to understand the effects of his behavior on his children.

Justin argues the superior court's finding is clearly erroneous because he had completed various substance abuse assessments and courses in conformity with his case plan, and he had "turned over a new leaf" after being released from incarceration and moving to Texas: he was living in a clean and sober home; he had enrolled in college; he continued to attend parenting classes and Alcoholics Anonymous (AA) meetings; he was no longer in an abusive relationship; he had a negative hair follicle test; and he had completed a psychological evaluation in June 2017 that, he alleges, ameliorated OCS's concerns.

Justin's arguments are unpersuasive. The treatment and education courses he cites do not satisfy his assessments' recommendations of intensive outpatient and low-intensity residential treatment. And because Justin testified to drug use in the month preceding trial — well within the time frame of sobriety that we have held does not preclude a failure to remedy finding — his subsequent negative hair follicle test does not demonstrate that the court's failure-to-remedy finding is clearly erroneous.[7]

---

[7]     *See Barbara P.*, 234 P.3d at 1261 (affirming failure-to-remedy finding despite mother's six months of sobriety); *Sherry R. v. State, Dep't of Heath & Soc. Servs., Div. of Family & Youth Servs.*, 74 P.3d 896, 902-03 (Alaska 2003) (affirming failure to remedy drug use despite mother's year of sobriety before termination trial, regular attendance at AA meetings, and maintenance of clean urinalysis tests).

Justin's June 2017 psychological evaluation does not undermine the superior court's underlying findings regarding his failure to address his lack of impulse control, aggression, or the effects of his behavior on his children. The evaluation rated Justin at high risk for child abuse and neglect based on factors including poor impulse control, substance abuse, emotional problems, personality impairment, an inadequate support system, domestic violence history, partner relational problems, and placing his personal needs above his children's needs. The evaluation recommended that Justin and the children's mother (or a future partner) "could benefit from participating in conjoint counseling where the counselor could assess the healthiness of their relationship and" could "assess their ability to parent in an effective and consistent manner."

The superior court appropriately considered "the history of conduct by or conditions created by" Justin when determining whether he remedied his conduct.[8] The court did not clearly err in finding that Justin's efforts, though commendable, were too little, too late given the three years he had to remedy his conduct and that the children — who had spent most of their lives in OCS custody — need not wait any longer.[9]

**B.    The Superior Court Did Not Clearly Err By Finding OCS Made Timely, Reasonable Efforts To Reunify The Family.**

Alaska Statute 47.10.086(a) requires OCS to make "timely, reasonable efforts to provide family support services" to the child and parent. OCS's duties include "identify[ing] family support services that will assist the parent . . . in remedying the

---

[8]    *See Ralph H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 255 P.3d 1003, 1011 (Alaska 2011) (quoting AS 47.10.088(b)(5)).

[9]    *See Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 763 (Alaska 2009) (affirming failure-to-remedy finding in part because year and a half to complete tasks for reunification was "just too long to ask of a toddler" who had been in custody for 28 months).

conduct," actively offering those services to the parent, and documenting those actions.[10]
Before terminating parental rights, OCS must prove by clear and convincing evidence
that it made reasonable efforts.[11]  Justin presents two arguments challenging OCS's
reasonable efforts:  first, that he was not timely provided a psychological evaluation, and
second, that he was not provided reasonable visitation.

### 1. Psychological evaluation referral

Justin argues OCS should have facilitated a psychological evaluation for
him during his incarceration, "when [OCS] knew where he was," rather than waiting
until the termination trial.  But Justin had an opportunity in 2014 to obtain a
psychological assessment in conjunction with a substance abuse assessment; he declined.
The following year OCS arranged an appointment for Justin to have a psychological
assessment, but that assessment was not completed either because he had not confirmed
the appointment or because OCS had not paid for the evaluation.  Justin failed to inform
his caseworker or to request the evaluation be rescheduled.

The  record supports the superior court's finding that OCS provided the
family and Justin numerous services from July 2014 through March 2016, including:
three case plans; supervised visitation; and referrals for substance abuse assessments,
urinalysis tests, parenting classes, paternity testing, transportation funding, and housing
assistance.  The record also supports the court's finding that OCS's contact with Justin
was "minimal because [his] whereabouts were unknown to [OCS] for much of the life
of th[e] case."  Justin's failure to attend several scheduled hearings prompted the court
to comment that it would be "enormously helpful for the parents to show up" to the
permanency and disposition hearings.  Given Justin's unwillingness to take advantage

---

[10]     AS 47.10.086(a)(1)-(3).

[11]     AS 47.10.088(a)(3).

of the 2014 psychological assessment, his failure to communicate to OCS his inability to obtain the 2015 evaluation, and the totality of OCS's other services to the family, Justin's failure to obtain a psychological evaluation until June 2017 does not undermine the superior court's reasonable efforts finding.

Justin also argues that OCS could, and should, have provided a psychological evaluation through Department of Corrections (DOC) when he was incarcerated from November 2015 through September 2016, but the failure to provide a specific referral is not fatal to a reasonable efforts finding.[12] Moreover, Justin received other services consistent with his case plan through DOC, including a substance abuse assessment, anger management and parenting classes, and a GED program.[13]

The superior court did not clearly err when it found OCS made reasonable efforts despite Justin's failure to complete a psychological evaluation until June 2017.

### 2. Visitation

The superior court found that OCS facilitated supervised visitation between Justin and the children, but the court noted that the visitation "periodically terminated and restarted." Justin argues that two such lapses, during his incarceration and during the termination trial, prove that he was not granted reasonable visitation.

---

[12] *See Josh L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 276 P.3d 457, 467 (Alaska 2012) ("OCS has no authority to require [DOC] to provide any assessments, treatments, or classes to an inmate."); *see also Philip J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 314 P.3d 518, 529 (Alaska 2013) (holding OCS's failure to refer parent to batterer's intervention or substance abuse evaluation was not inconsistent with active efforts because "OCS is not required to refer a parent to specific support programs").

[13] *See Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1262 n.48 (Alaska 2010) ("Services offered by [DOC] are considered efforts of OCS for purposes of the reasonable efforts analysis.").

First, Justin argues that the two or three visits OCS facilitated during the ten months he was incarcerated did not constitute reasonable efforts. But visitation during Justin's incarceration was "litigated extensively." After two months of incarceration, in January 2016 Justin moved to compel visitation. Following months of motion practice and Justin's ultimate service of his motion to compel at the court's direction on DOC, OCS began visitation in the spring. Visitation temporarily ceased when Kora's mental health evaluation recommended that visitation with Justin be placed on hold while she adjusted to visits with her mother. Visitation with Justin did not resume before his release from custody in September.

The record clearly supports the court's finding that OCS made reasonable efforts to provide Justin visitation up until July 2016. At that point, OCS's records demonstrate it knew the mother had disengaged from visitation; there was no further cause for the therapeutically directed temporary cessation of visits with Justin. Justin argues OCS should have then renewed visitation at least from July until his release from custody in September. But OCS's failure to facilitate visitation for two months during Justin's incarceration is not fatal to a reasonable efforts finding.[14] Because "the law does not require perfect efforts, just reasonable ones," the superior court's finding that OCS made reasonable efforts during this time is not clearly erroneous.[15]

Justin next faults OCS for failing to provide "requested Skype visits during the pendency of the termination trial." Justin's counsel made this request in June 2017,

---

[14]     *See id.* at 1262 ("While we agree . . . that OCS should make every reasonable effort to coordinate visitation where possible between incarcerated parents and their children, its failure to do so in this case does not preclude a finding that it made reasonable efforts . . . .").

[15]     *See Winston J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 134 P.3d 343, 347 (Alaska 2006).

four months after trial began. Justin argues OCS should have obtained a new therapeutic recommendation for the children because the existing recommendation was outdated. But Justin left Alaska without providing OCS his contact information or address, and he did not make contact with OCS in the five months preceding trial. He also testified on the first day of trial that he was "not going to do anything on [his] case plan until [the trial was] over." Justin's disappearance and subsequent stated unwillingness to participate in services OCS recommended in Texas render OCS's efforts reasonable under the circumstances.

## V.    CONCLUSION

We AFFIRM the superior court's decision terminating Justin's parental rights.